BEAM, Circuit Judge,
with whom FLOYD R. GIBSON, McMILLIAN, and MURPHY, Circuit Judges, join, concurring and dissenting.
I concur in the court’s “comprehensive and integrated” rule that “a valid tribal interest must be at issue before a tribal court may exercise civil jurisdiction over a non-Indian or nonmember, but once the tribal interest is established, a presumption arises that tribal courts have jurisdiction over the non-Indian or nonmember unless that jurisdiction is affirmatively limited by federal law.” Supra at 938-939. I dissent, however, from the court’s application of the rule in this case and from the implication that a tribal court has no jurisdiction in a civil case unless the dispute involves an Indian or a member of the tribe.
The concept of “tribal interest” as advanced by the court appears to be a free-floating theory wholly detached from geographic reality except in a most attenuated way. I dissent from this ideation of tribal jurisdiction because it is contrary to Brendale v. Confederated Tribes & Bands of the Yakima Indian Nation, 492 U.S. 408, 109 S.Ct. 2994, 106 L.Ed.2d 343 (1989); Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987); National Farmers Union Ins. Co. v. Crow Tribe of Indians, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) and other earlier cases, to say nothing of Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), the case most heavily relied upon by the court.
A legitimate judicial system arises as an attribute of sovereignty. Indeed, “the existence and extent of a tribal court’s jurisdiction ... require[s] a careful examination of tribal sovereignty.” National Farmers Un *942 ion, 471 U.S. at 865, 105 S.Ct. at 2453. Accordingly, any determination of tribal court jurisdiction requires examination of the parts and pieces of tribal sovereignty and how they fit within the jurisdictional equation.
Historically, the connection of Indians to the land has shaped the course of Indian law. In the landmark case of Worcester v. Georgia, 31 U.S. (6 Pet.) 515, 557, 8 L.Ed. 483 (1832), Indian nations were recognized as “distinct political communities, having territorial boundaries, within which their authority is exclusive, and having a right to all the lands within those boundaries, which is not only acknowledged, but guaranteed by the United States.” In Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), the Court recognized the importance of Indian land when it decided the question of jurisdiction over a case brought in state court by a non-Indian merchant against Indian customers. Holding that the case should have been brought in tribal court, the Court stated “[i]t is immaterial that respondent is not an Indian. He was on the Reservation and the transaction with an Indian took place there.” Id. at 223, 79 S.Ct. at 272.
Even in more recent cases the Court has recognized the significance of geography to tribal sovereignty. In U.S. v. Mazurie, 419 U.S. 544, 557, 95 S.Ct. 710, 717-18, 42 L.Ed.2d 706 (1975), the Court noted that its cases had consistently recognized that the Indian tribes retain “attributes of sovereignty over both their members and their territory.” (Emphasis added.) Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982), explores a tribe’s historic power to exclude others from tribal lands.
Brendale supports a rule which would allow a court to consider Indian territory in determining the tribe’s interest in a given case. The plurality in Brendale suggests a case-by-case approach to deciding whether Montana’s second exception confers tribal jurisdiction. The precise wording of the second exception, the plurality writes, indicates that “a tribe’s authority need not extend to all conduct that ‘threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe,' but instead depends on the circumstances.” Brendale, 492 U.S. at 429, 109 S.Ct. at 3007. Thus, Brendale suggests that the meaning of Montana’s second exception is not static but depends on various factors.
All of these cases further suggest that geography plays a vital role in a tribe’s political integrity, economic security, health and welfare, and therefore must be strongly considered in any application of Montana’s second exception, whether or not Indian or tribal members are parties to the dispute.
Even Montana lends support to the geographic component of tribal court jurisdiction. The Supreme Court stated:
[t]o be sure, Indian Tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands.
450 U.S. at 565, 101 S.Ct. at 1258 (emphasis added). The Court in Montana cited its earlier holding in United States v. Wheeler, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978) and noted that Indian Tribes are ‘“unique aggregations possessing attributes of sovereignty over both their members and their territory.’ ” 450 U.S. at 563, 101 S.Ct. at 1257 (emphasis added).
In finding no jurisdiction here, the court describes tribal membership as “critical” to the Court’s holding in Montana. Supra at 941. Such a characterization oversimplifies Montana, overstates the role tribal membership plays in a determination of tribal court jurisdiction and understates the role of territorial integrity. Montana was the product of several factors, including the nature of the regulation in question and the application of that regulation to fee land. It fully recognized that non-Indians and nonmembers of a tribe can affect the political integrity, economic security, health and welfare of a tribe under the proper circumstances. The Montana Court’s establishment of two tribal jurisdiction “exceptions” and its refusal to wholly extend its holding in Oliphant[1] to civil *943 jurisdiction demonstrates the Court’s cognizance of the influence of non-Indians and tribal real estate on tribal self-government.
One of the strongest interests that the tribe advances in this case is its interest in providing a forum for this plaintiff. And, the question of North Dakota state court jurisdiction is not as clear-cut as the court suggests. In fact, such jurisdiction is doubtful.
Two important points are relevant to this issue. First, Public Law 280, 28 U.S.C. § 1360, does not, for reasons other than those advanced by the court, have any bearing on this issue. In footnote 6, supra at 940, the court explains that 28 U.S.C. § 1360 applies only to actions to which Indians are parties. The original Public Law 280, however, applied to all “civil causes of action.” See Act of Aug. 15, 1953, Pub.L. 280, ch. 505, 67 Stat. 588 (codified as amended at 18 U.S.C. § 1162, 25 U.S.C. §§ 1321-1326, 28 U.S.C. § 1360); see also Felix S. Cohen, Handbook of Federal Indian Law 362-63 (1982 ed.). Under the original Act, assumption of jurisdiction was mandatory for some states and optional for others, including North Dakota. It was not until 1968, when amendments to Public Law 280 were enacted, that state assumption of jurisdiction was limited to actions to which Indians were parties, subject to tribal consent. North Dakota had chosen to assume civil jurisdiction before the amendments were adopted,[2] but had voluntarily conditioned its jurisdiction upon consent of the tribes. N.D.Cent.Code § 27-19-01 (1991). The tribes of the Fort Berthold reservation did not consent. Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng’g I, 467 U.S. 138, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984). Thus, North Dakota has no jurisdiction over the Fort Berthold reservation under 28 U.S.C. § 1360.
My second point is more relevant to the question of the authority of a state court to assume jurisdiction over a cause of action arising on an Indian reservation. Even absent jurisdiction conferred by federal statute, state courts may exercise jurisdiction over some civil causes of action arising on reservation lands. The scope of state court jurisdiction is limited by the Williams v. Lee “infringement” test: “whether the state action infringe[s] on the right of reservation Indians to make their own laws and be ruled by them.” 358 U.S. at 220, 79 S.Ct. at 270-71. State court jurisdiction cannot be disclaimed, at least where there is no other forum in which to bring an action. Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng’g II, 476 U.S. 877, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986).
Thus, the question of whether a North Dakota state court can provide a forum for Mrs. Fredericks depends upon whether state jurisdiction in this instance would infringe upon the tribe’s right to self government. Commentators seem to agree that state courts have subject matter jurisdiction over suits by non-Indians against non-Indians, even when the claim arises in Indian Country, so long as Indian interests are not affected. See, e.g., Cohen, 352 (“The scope of preemption of state laws in Indian country generally does not extend to matters having no direct effect on Indians, tribes, their property, or federal activities. In these situations state courts have their normal jurisdiction over non-Indians and their property, both in criminal and civil cases.”); Sandra Hansen, Survey of Civil Jurisdiction in Indian Country 1990, 16 Am.Indian L.Rev. 319, 346 (1991).
The Three Affiliated Tribes have, however, adopted a tribal code which outlines civil court jurisdiction within the exterior boundaries of the reservation and which, in the absence of federal law to the contrary, imposes tribal law and custom, not North Dakota statute or common law, as controlling precedent for torts occurring within the reservation. See Tribal Code of the Three Affiliated Tribes of the Fort Berthold Reservation Ch. 1, § 2 (1980); see also Cohen 334-35.
*944 Thus, in this case, state court jurisdiction would infringe upon the tribe’s right of self government including the right to provide a forum, indeed the only forum, available to this resident of the reservation. The accident occurred on Indian land over which the tribe asserts territorial sovereignty and involved a non-Indian truck driver brought onto the reservation by a commercial contract between the tribe and his employer. Even though Mrs. Fredericks was a non-Indian, she had long resided on the reservation with a tribal member spouse (now deceased) and is the mother of adult children who are enrolled members of the tribe. Had either accident participant been an Indian, the situs of the accident on the reservation would have clearly dictated tribal court jurisdiction as established in Brendale, Iowa Mutual, National Farmers Union and Montana. The tribal court has jurisdiction over Mrs. Fredericks’ claim. I dissent from the court’s ruling to the contrary.

. In Oliphant, the Court held that tribal courts could not validly assert criminal jurisdiction over non-Indians. Oliphant v. Suquamish Indian *943 Tribe, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978).

. As Felix Cohen explains, although the amendments altered any prospective assumption of Public Law 280 jurisdiction, it preserved all jurisdiction previously acquired under the Act. Cohen, 363 n. 126.